**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| KATHLEEN LEON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BENSALEM TOWNSHIP | : | NO. 23-01374 |
| SCHOOL DISTRICT | : | |

---

**J. Perez**                                                                                          **August 9, 2024**

<u>MEMORANDUM</u>

    Plaintiff Kathleen Leon brings this employment discrimination action against Defendant Bensalem Township School District ("Defendant" or "the School District") under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000(d) , *et seq.*; the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12101, *et seq.*; the Pennsylvania Human Relations Act (the "PHRA"), 43 Pa. Cons. Stat. § 951, *et seq.*; and the Family and Medical Leave Act (the "FMLA"), 29 U.S.C. §§ 2601, *et seq*. Plaintiff claims that Defendant, through its administrative staff, discriminated against Plaintiff on the basis of her gender and disability status, retaliated against her for the exercise of her lawful rights, and ultimately created a work environment so hostile to Plaintiff that she was forced to resign. This matter is presently before the Court on Defendant's motion to dismiss. For the following reasons, the motion is granted in part and denied in part.

**I.      BACKGROUND**

    Plaintiff Kathleen Leon was employed by Defendant Bensalem Township School District from 1998 to June 2022. Am. Compl. ¶¶ 10-11, ECF No. 10. As of 2015, Plaintiff served as Assistant to the Superintendent, briefly serving as Acting Superintendent prior to the appointment

of Superintendent Samuel Lee. *Id.* ¶¶ 12-15. She also performed several other roles within the School District, including as Title IX Coordinator, Pandemic Coordinator, and Internal Chairperson of Instructional School Board meetings. *Id.* ¶¶ 16-17.

After her 2015 appointment as Assistant to the Superintendent, Plaintiff claims she began to experience gendered hostility in the workplace. *Id.* ¶ 19. Plaintiff alleges that Superintendent Lee was "rude," "condescending," and "aggressive" towards her, but not towards male administrators; moreover, she alleges that male staff received preferential treatment from Lee. *Id.* ¶¶ 21, 45. Plaintiff further alleges that Bensalem High School Principal William Ferrara, Plaintiff's subordinate, consistently refused to take instruction from female administrators and routinely bypassed Plaintiff in the chain of command when relaying important information. *Id.* ¶¶ 21. Diana Garaitonandia, former Assistant Principal of Bensalem High School, witnessed Ferrara become so angry upon receiving instruction from Plaintiff that he "would kick the walls, curse and aggressively pace around the building," and make "negative and derogatory comments" about Plaintiff. *Id.* ¶ 23(a), (b). Garaitonandia never witnessed Ferrara act this way after from male supervisors. *Id.* ¶ 23(c). Garaitonandia also once witnessed "[a]nother male administrator" make derogatory comments about Plaintiff and call her a "c*nt." *Id.* ¶ 24.

Plaintiff states that, due to the stress caused by Lee and Ferrara's conduct, she began experiencing chest pains, dizziness, frequent nausea, fatigue, and anxiety. *Id.* ¶ 28. She began treatments for hypertension, chest pain, anxiety, increased migraines, gastritis, and stress; Plaintiff also began seeing a therapist. *Id.* ¶¶ 28-29, 38. Plaintiff avers that her conditions affected her ability to breathe, stand, and focus. *Id.* ¶ 30. Plaintiff took a medical leave of absence, under the FMLA, in January and February 2020. *Id.* ¶¶ 31, 36.

In 2021, Garaitonandia filed her own Title IX complaint against Ferrara. *Id.* ¶ 21(14). Plaintiff was called to "testify" to Human Resources ("HR") and an attorney as to Plaintiff's own experience with Ferrara. *Id.* ¶ 41. Plaintiff did so on April 19, 2021, detailing both Lee's and Ferrara's treatment of her and general conduct. *Id.* at 10-11. Plaintiff was told that Lee would be notified that she had testified and informed as to what she had testified. *Id.* at 9.

On May 5, 2021, Lee asked to meet with Plaintiff and informed her that she had "compromised the mission of the district" in the past year. *Id.* ¶ 48. Lee then informed Plaintiff that Dr. Victoria Velazquez would now be "Assistant to the Superintendent K-12 Administration" and Plaintiff would be "Assistant to the Superintendent Teaching & Learning." *Id.* ¶¶ 50-51, 58, 59. Plaintiff asserts that Velazquez's new title referred to the job that Plaintiff had been performing. *Id.* ¶ 16, 50. In her new position, Plaintiff's salary did not change, but her new job description included sixty-four bullet-pointed duties, where Velazquez' job description included only thirty-two. *Id.* ¶¶ 51, 61-63.

On June 22, 2021, Plaintiff experienced a flare-up of her medical conditions, causing her to be hospitalized for several days and take another FMLA leave of absence from June 23, 2021 to October 11, 2021. On July 7, 2021, Plaintiff filed a Charge of Discrimination in the Equal Employment Opportunity Commission ("the EEOC"), alleging gender and disability discrimination and retaliation, based on the above facts and under Title VII, the ADA, and the FMLA. *Id.* ¶ 70. The School District "had learned" of Plaintiff's EEOC complaint by the time she returned to work in October 2021. *Id.* ¶ 72.

Upon her return to work in October 2021, several of Plaintiff's duties had been passed to Velazquez, and were not returned to Plaintiff. *Id.* ¶¶ 74-76, 90-94. Other duties, like monitoring the Curriculum budget, should have transferred to Plaintiff after the change to her position, but

instead were retained by Velazquez. *Id.* ¶¶ 103-04. Several of Plaintiff's direct subordinates would report only to Lee or Velazquez rather than to Plaintiff, and Velazquez did not include Plaintiff in communications with the rest of their team. *Id.* ¶¶ 77-78, 81. Plaintiff was excluded from meetings she previously had attended, *id.* ¶¶ 83-85, 90-94, and was denied access to information, *id.* ¶¶ 97, 99-101, 103-05, 107-09. Further, Plaintiff was removed from her roles as Title IX Coordinator and Internal Chairperson of the Instructional School Board meetings. *Id.* ¶ 97.

When Plaintiff asked to meet with HR about these events, HR scheduled a meeting with Plaintiff, Lee, and Velazquez in which Lee and Velazquez "admonish[ed]" Plaintiff. *Id.* ¶¶ 113-17. Plaintiff's further complaints to HR and Lee prompted no action from either, *id.* ¶¶ 118-20, and Plaintiff overheard Velazquez insulting Plaintiff in the office, *id.* ¶ 122. On February 11, 2022, Plaintiff finally submitted to the School District her intent to retire as of June 30, 2022, but then used her accumulated vacation and sick days to stop work as of May 22, 2022. *Id.* ¶¶ 131-34.

Plaintiff filed suit in this Court, claiming: (1) gender discrimination, retaliation, and a hostile work environment, under Title VII and the PHRA; (2) disability discrimination, retaliation, and a hostile work environment under the ADA and the PHRA; and (3) interference with and retaliation for the exercise of Plaintiff's rights under the FMLA.

## II.    STANDARD OF REVIEW

When reviewing a Rule 12(b)(6) motion to dismiss, a District Court must first identify the necessary elements the plaintiff must plead in order to state a claim. *Connelly v. Steel Valley School Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) (citations omitted). The Court must then separate the complaint's factual and legal allegations, disregarding the complaint's legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009)). Then, the Court must determine whether the plaintiff has alleged sufficient facts

to establish a claim "plausible" enough to entitle her to relief. *Fowler v. UPMC*, 758 F.2d at 210-11. The complaint's factual allegations must be accepted as true and construed in the light most favorable to the plaintiff. *Id.*; *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). From there, the Court must rely on its "judicial experience and common sense" to draw any reasonable inferences from the pled facts and to determine the plausibility of the plaintiff's claim. *Fowler v. UPMC*, 758 F.2d at 211 (quoting *Iqbal*, 556 U.S. at 679).

To survive a motion to dismiss, a plaintiff need not "establish the elements of a *prima facie* case but instead, need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler v. UPMC*, 578 F.3d at 213 (citations and internal quotations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 788-89 (3d Cir. 2016).

## III.  ANALYSIS[1]

### A.  Plaintiff's Title VII and PHRA Claims

#### 1.  Gender Discrimination

Title VII prohibits gender discrimination in employment. 42 U.S.C. § 2000e-2(a)(1). To plead a plausible claim for employment discrimination, a plaintiff must allege that: (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) the adverse action occurred under circumstances which give rise to an inference of discrimination. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).

Plaintiff plausibly alleges two adverse employment actions: (1) her May 2021 change of position, from "Assistant to the Superintendent" to "Assistant to the Superintendent—Teaching and Learning" and the accompanying changes to the position's duties; and (2) her constructive

---

[1] Courts interpret the PHRA's anti-discrimination provisions consistently with their federal provisions in Title VII and the ADA. *Lepore v. Lanvision Systems, Inc.*, 113 Fed.App'x 449, 452 (3d Cir. 2004); *Kelly v. Drexel University*, 94 F.3d 102, 105 (3d Cir. 1996) (citations omitted). Accordingly, we group the gender and disability claims in analysis.

discharge, based on the events after October 2021. An involuntary position transfer may be an adverse employment action when the transfer's "material effects" are objectively unfavorable to the employee. *Fallon v. Meissner*, 66 Fed.App'x 348, 351-52 (3d Cir. 2003); *see Muldrow v. City of St. Louis, Missouri*, 601 U.S. ----, 144 S.Ct. 967, 974 (2024).[2] Plaintiff pleads sufficient facts to indicate that the effects of her 2021 change of position were objectively adverse. To claim a constructive discharge due to employment discrimination, a plaintiff must allege "working conditions so intolerable that a reasonable person would have felt compelled to resign." *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004).[3] Granting, as discussed below, that Plaintiff successfully claims Title VII retaliation in May-June 2021 and a hostile work environment from 2015-2021, Plaintiff plausibly alleges that the working environment objectively worsened after October 2021, to the point where Plaintiff was constructively discharged.

However, Plaintiff does not plead sufficient facts to allege that either adverse action occurred under circumstances which give rise to an inference of discrimination. To establish this element, a plaintiff may either:

> (1) introduce evidence of comparators (i.e., similarly situated employees who (a) were not members of the same protected class and (b) were treated more favorably under similar circumstances); or (2) rely on circumstantial evidence that otherwise shows a causal nexus between his membership in a protected class and the adverse employment action.

---

[2] The Third Circuit previously defined an adverse employment action as one which is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Tourtellote v. Eli Lilly and Co.*, 636 Fed.App'x 831, 842 (3d Cir. 2016). However, in *Muldrow v. City of St. Louis, Missouri*, the Supreme Court reevaluated such standards in the context of Title VII employment discrimination claims, holding that while a plaintiff "must show some harm respecting an identifiable term or condition of employment," she need not show "that the harm incurred was significant . . . [o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." 601 U.S. ----, 144 S.Ct. 967, 974 (2024) (internal quotations omitted). *See also, Peifer v. Bd. of Prob. and Parole*, ---- F.4th ----, No. 23-2081, 2024 WL 3283569, at *4-5 (3d Cir. 2024) (adopting the *Muldrow* standard).

[3] Though a constructive discharge is a type of adverse employment action, thus far courts have not interpreted *Muldrow* to lessen the standard for showing constructive discharge. *See Peifer*, 2024 WL 3283569, at *4.

*Greene v. V.I. Water & Power Auth.*, 557 Fed.App'x 189, 195 (3d Cir. 2014). At the motion to dismiss stage, however, a plaintiff can plead this element by presenting sufficient facts to raise a reasonable expectation that discovery will uncover proof that her gender was either a "motivating" or "determinative" factor in the employer's adverse employment actions. *Connelly v. Lane*, 809 F.3d at 789.

Plaintiff's complaint states that "Plaintiff believes and avers that her gender was a motivating and/or determinative factor in Defendant's decisions" to alter her position in May-June 2021 and to reduce her duties after October 2021 such that Plaintiff was constructively discharged. However, beyond this conclusory statement, Plaintiff pleads no facts raising a reasonable expectation that her gender was a motivating or determinative factor in either adverse employment action. Though Plaintiff was removed from her position as Ferrara's supervisor, this position was taken over by Velazquez, another woman, rendering Plaintiff unable to make out a disparate treatment claim. Nor does Plaintiff plead any circumstantial facts indicating a causal nexus between Plaintiff's gender and her removal from her position, regardless of who replaced her. Similarly, Plaintiff pleads no facts indicating that her treatment October 2021-onward was related at all to her gender. Plaintiff does not supply facts to indicate that she was treated poorly either in comparison to male administrators or due to Plaintiff's own gender.

Defendant's motion to dismiss Plaintiff's Title VII discrimination claim is granted.

### 2.    Retaliation

Title VII's antiretaliation provision forbids employers from discriminating against employees for opposing practices forbidden by Title VII or for having "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a); *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006). To allege retaliation, a

plaintiff must plead sufficient facts to plausibly allege: "(1) she engaged in conduct protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action." *Connelly v. Lane*, 809 F.3d at 789.

To plausibly allege a retaliatory adverse employment action, a plaintiff must show that "a reasonable employee would have found the challenged action materially adverse [such that] it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *LeCadre v. Att'y Gen. Pa.*, No. 23-2898, 2024 WL 2763829, at *3 (3d Cir. May 30, 2024).[4] Lateral position transfers may also constitute retaliatory adverse employment actions, when they affect the employee's compensation, terms, or conditions of employment. *Walton v. Westmoreland Cnty.*, No. 21-860, 2024 WL 36971, at *13 (W.D. Pa. Jan. 3, 2024) (citations omitted); *see also Zelinski v. Pa. State Police*, 108 Fed.App'x 700, 705-06 (3d Cir. 2004). Plaintiff has provided sufficient facts to allege that her 2021 change in position was a retaliatory adverse employment action. As discussed above, Plaintiff has also plausibly alleged that she suffered a constructive discharge.

The causation element of a retaliation claim can be established by temporal proximity between the employee's protected action and the employer's allegedly retaliatory action. *Qin v. Vertex, Inc.*, 100 F.4th 548, 476-77 (3d Cir. 2024). Courts may also consider "circumstantial evidence of a pattern of antagonism following the protected conduct," as well as simply "the proffered evidence, looked at as a whole." *Kachmar v. SunGard Data Syst., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997).

---

[4] Despite updating the standard for a discriminatory adverse employment action, the *Muldrow* Court affirmed the standard for a retaliatory adverse employment action: the action must be "materially adverse" such that it causes "significant" harm. *Muldrow*, 144 S.Ct. at 976; *White*, 548 U.S. at 53. Title VII's anti-discrimination provision is simply meant to ensure that employees do not experience discriminatory harm at work, "without distinguishing between significant and less significant harms." *Muldrow*, 144 S.Ct. at 976. However, a "heightened bar" is appropriate in the context of retaliation, the *Muldrow* Court explained, because Title VII's anti-retaliation provision is meant to prohibit employers from taking actions so severe as to deter employees from speaking out against discrimination. *Id.* at 974, 976.

Here, we may reasonably infer that Plaintiff's June 2021 change in position was retaliation for Plaintiff's testimony in Garaitonandia's Title IX claim, and that Plaintiff's constructive discharge after her 2021 EEOC complaint was retaliation for that complaint. Defendant's motion to dismiss Plaintiff's Title VII retaliation claim is therefore denied.

### 3. Hostile Work Environment

To allege a claim of hostile work environment due to gender discrimination, a plaintiff must show: "(1) the employee suffered intentional discrimination because of his/her sex, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of *respondeat superior* liability." *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). "Discrimination" for the purposes of a hostile work environment claim is not limited to "economic" or "tangible" actions; rather, the doctrine includes instances where "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

Here, Ferrara's behavior altered the conditions of Plaintiff's workplace over time, both by objectively undermining her authority and by subjectively causing her demonstrated stress and physical harm. Moreover, the hostility was pervasive within the workplace, as Lee was aware of Ferrara's conduct and did not intervene, and as another male administrator was witnessed calling Plaintiff a "c*nt." In totality, these events form a pattern of gendered hostility that a reasonable person would find detrimental. Because Plaintiff plausibly alleges a hostile work environment due to gender discrimination,Defendant's motion to dismiss this claim is denied.

B.     **Plaintiff's ADA and PHRA Claims**

1.     **Disability Discrimination**

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). To allege discrimination, an employee must plead that: (1) she is considered disabled under the ADA; (2) she is otherwise qualified for her position; and (3) she was subjected to an adverse employment action as a result of disability discrimination. *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010). Though Defendant contends that Plaintiff's amended complaint fails to show the first element, at this time Plaintiff need only identify an impairment, allege that her employer was aware of it, and allege facts which "plausibly suggest[ ] that she might be substantially limited in the major life activity of working." *Fowler v. UPMC*, 578 F.3d at 213. Plaintiff has done so.

Plaintiff's May-June 2021 change of position and her constructive discharge constitute adverse employment actions, for purposes of her ADA claim.[5] Causation in ADA discrimination claims has been alleged by showing a temporal proximity between ADA-protected activity and the adverse action. *See Melton v. SEPTA*, No. 23-1260, 2024 WL 1163537, at * 3 (E.D. Pa. Mar. 18, 2024); *Angelis v. Phila. Housing Auth.*, No. 23-460, 2024 WL 643142, at * 13 (E.D. Pa. Feb. 14,

---

[5] The Supreme Court recently revised the standard for an adverse employment action in a Title VII employment discrimination case. *Muldrow v. City of St. Louis, Missouri*, 144 S.Ct. at 967. Though Courts in this Circuit have not yet had the chance to weigh in, several other Circuit Courts have since applied this standard to adverse employment actions in ADA cases. *See Rios v. Centerra Group LLC*, No. 22-2536, 2024 WL 3218850, at *5-6 (1st Cir. Jun. 28, 2024); *Versaggi v. KLS Martin, L.P.*, No. 21-20547, 2024 WL 2290653, at * 2 (5th Cir. May 21, 2024). The Third Circuit traditionally looks to Title VII case law to inform its analysis of ADA claims. *Fowler v. AT&T, Inc.*, 19 F.4th 292, 298 (3d Cir. 2021) (citing *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999)). Therefore, it is reasonable to predict that the Third Circuit will follow the First and Fifth and adopt the *Muldrow* standard for disability discrimination claims under the ADA. Regardless, Plaintiff's change of position constitutes an adverse action under the pre-*Muldrow* standard as well, as it affected the "terms, conditions, and privileges of [Plaintiff's] employment." 42 U.S.C. § 12112(a); *Fowler v. AT&T*, 168 F.4th at 300.

Because the ADA and Title VII constructive discharge standards are the same, *see Colwell v. Rite Aid Corp.*, 602 F.3d 495, 502-03 (3d Cir. 2010), and having determined that Plaintiff plausibly alleged working conditions so intolerable that a reasonable person would be compelled to resign, this Court concludes that Plaintiff sufficiently pleads constructive discharge for the purposes of her ADA claim.

2024). Allegations of disparate treatment between disabled and able-bodied employees can also show discrimination. *Fowler v. AT&T, Inc.*, 19 F.4th 292, 301-03 (3d Cir. 2021).

Plaintiff pleads no facts to indicate that her May-June 2021 change of position was a result of her disparate treatment or that it related in any way to her disabilities. However, she plausibly alleges that the actions cumulatively forming her constructive discharge claim were discriminatory, based on her status or perceived status as disabled. The temporal proximity between Plaintiff's 2021 medical leave and the adverse actions taken against her upon her return, supports a reasonable inference that the School District reduced Plaintiff's responsibilities and constructively discharged her either because of her disabilities or her exercise of her right to time off as a reasonable accommodation.

Defendant's motion to dismiss Plaintiff's ADA discrimination claim is therefore denied.

### 2.    Retaliation

The ADA prohibits retaliation against any individual for opposing "any act or practice" made unlawful by the ADA, or for filing a charge under the ADA. 42 U.S.C. § 12201(a). To allege retaliation, a plaintiff must show that: (1) she invoked an ADA-protected right; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to her invocation of rights. *Drizos v. PNC Inv. LLC*, No. 22-1736, 2023 WL 4986496, at * 5 (3d Cir. Aug. 3, 2023) (citing *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301-02 (3d Cir. 2012)). Causation may be shown when the temporal proximity between the employee's protected action and the adverse action is "unusually suggestive of retaliatory motive." *Shaner v. Synthes*, 204 F.3d 494, 505 (3d Cir. 2000). Absent such temporal proximity, the "proffered evidence, looked at as a whole" may support for an inference of retaliation. *Windish v. Buckingham Twp.*, No. 20-5942,

2021 WL 510292, at *2 (E.D. Pa. Feb. 11, 2021) (citing *Leboon v. Lancaster Jewish Comm. Ctr. Ass'n*, 503 F.3d 217, 232-33 (3d Cir. 2007)).

As with her ADA discrimination claim, Plaintiff pleads no facts to indicate that her May-June 2021 change of position was in retaliation for the exercise of any ADA-protected right. However, Plaintiff plausibly alleges that her constructive discharge was retaliation for her July 2021 EEOC complaint, in which she alleged disability discrimination. Defendant's motion to dismiss Plaintiff's ADA retaliation claim is therefore denied.

### 3.      Hostile Work Environment

To establish a hostile work environment claim under the ADA, a plaintiff must allege:

> (1) [she] is a qualified individual with a disability under the ADA; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and (5) that [her employer] knew or should have known of the harassment and failed to take prompt effective remedial action.

*Hatch v. Franklin Cnty.*, 755 Fed.App'x 194, 201-02 (3d Cir. 2018) (alterations in original) (citations omitted). Because Plaintiff plausibly makes out an ADA discrimination claim based on the events comprising her constructive discharge, and the standard of severity for a constructive discharge is higher than for a hostile work environment, it follows that Plaintiff has plausibly alleged a hostile work environment based on her disability or perceived disabilities.

Defendant's motion to dismiss this claim is denied.

### C.    Plaintiff's FMLA Claims

#### 1.    FMLA Interference

Employers may not "interfere with, restrain, or deny" an employee's rights under the FMLA. 29 U.S.C. § 2615(a)(1); *Lichtenstein*, 691 F.3d at 301. To claim FMLA interference, an employee must show:

> (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

*Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014) (citing *Sommer v. The Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006)). Interference claims are not about discrimination or disparate treatment, but rather the employer's comportment or failure to comport with FMLA requirements. *Sommer*, 461 F.3d at 399. As such, an employer interferes with an employee's FMLA benefits where the employer refuses to grant FMLA leave or discourages the employee from taking leave. *Clark v. Phila. Hous. Auth.*, 701 Fed.App'x 113, 117 (3d Cir. 2017) (citing 29 C.F.R. § 825.220(b)). The Eastern District has sometimes required that a complaint specifically allege a causal connection between the employer's interference and the harm the employee suffered. *See Chacko v. Sigmapharm Lab'y, LLC*, No. 22-2336, 2023 WL 2330419, at *5 (E.D. Pa. Mar. 2, 2023) (citing *Ragsdale v. Wolverine WorldWide, Inc.*, 535 U.S. 81, 89 (2002)).

Even without requiring Plaintiff to specifically plead a causal connection, as the *Chacko* Court would, Plaintiff does not state sufficient factual matter to support the conclusory statement that the School District's actions interfered with her rights under the FMLA. Plaintiff took FMLA leave twice, in 2020 and in 2021, and does not report that the School District denied or discouraged either leave request. Rather, Plaintiff alleges that the School District's adverse employment actions

were taken to "intimidate Plaintiff or dissuade" her from further exercising her rights under the FMLA. None of these actions are directly related to past or future FMLA leaves, and Plaintiff does not claim or show that they did dissuade or plausibly could have dissuaded her from taking further leave. Defendant's motion to dismiss Plaintiff's FMLA interference claim is therefore granted.

### 2.     FMLA Retaliation

To claim FMLA retaliation, an employee must show that: "(1) she invoked her right to FMLA-qualifying leave; (2) she suffered an adverse employment decision; and (3) the adverse action was causally related to her invocation of rights. *Lichtenstein*, 691 F.3d at 301-02. To plausibly plead causation in an FMLA retaliation claim, the employee may rely either on "(1) [an] unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing." *Clark*, 701 Fed.App'x at 116 (citations omitted).

Plaintiff's May-June 2021 change of position is not temporally or directly connected to any exercise of her FMLA rights such that she may claim the adverse action was retaliatory. However, Plaintiff plausibly alleges FMLA retaliation based on her constructive discharge, given the temporal proximity between her return from FMLA leave in October 2021 and the pattern of hostile actions that began thereafter. Defendant's motion to dismiss Plaintiff's FMLA retaliation claim is therefore denied.

## IV.   CONCLUSION

When considering a motion to dismiss, the Court must take the well-pleaded facts as true and draw all reasonable inferences in favor of the non-movant. The Court grants Defendant's motion to dismiss Plaintiff's Title VII and PHRA gender discrimination claims and Plaintiff's

FMLA interference claim. This Court denies Defendant's motion to dismiss Plaintiff's remaining claims. An appropriate order to follow.